IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION



FILED
DEC 15 2008
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

JTH TAX, INC., d/b/a/
LIBERTY TAX SERVICE

    PLAINTIFF,

v.

ITS FINANCIAL, LLC, d/b/a
INSTANT TAX SERVICE

    DEFENDANT.

CIVIL CASE NO.: 2:08CV271

## OPINION and ORDER

This matter is before the Court on Plaintiff JTH Tax, Inc.'s ("Plaintiff" or "JTH") Motion for Preliminary Injunction ("Plaintiff's Motion"). Doc. 3. For the reasons explained below, Plaintiff's Motion is **DENIED**.

Also before the Court is Defendant ITS Financial, LLC's ("Defendant" or "ITS") Motion to Strike Plaintiff's Motion for Preliminary Injunction. Doc. 20. Because Plaintiff's Motion is **DENIED**, Defendant's motion to strike is **DISMISSED** as **MOOT**.

### I. Factual and Procedural Background

On June 13, 2008, Plaintiff filed its complaint against Defendant in this Court. Doc. 1. Plaintiff's complaint alleges one count of false advertising, in violation of 15 U.S.C. § 1125(a). Generally, Plaintiff's complaint alleges that Defendant's radio advertisements made false and misleading statements concerning the "average" revenues generated by Defendant's franchises.

With its complaint, Plaintiff also filed a motion requesting a preliminary injunction and a memorandum of support thereof. Docs. 3 (Motion) and 4 (Memorandum). Specifically, Plaintiff

requests the Court enter a preliminary injunction order compelling Defendant to: (1) "discontinue further use in [sic] all advertising in the United States, by radio and otherwise, which asserts that the 'average' or the 'average three-plus-year' franchise for Instant Tax generated $187, 287;" and (2) "in all future advertising which cites to 'average' revenue generated by Instant Tax franchisees, that the 'average' calculation be made truthfully, and that any omitted franchises from this calculation be fully and clearly disclosed in such advertisement." Doc. 3 at ¶ 6.

In its motion and accompanying memorandum, Plaintiff argues that it will sustain irreparable harm if an injunction is not granted, that Defendant will not be harmed by the entry of an injunction, that Plaintiff will likely succeed on the merits, and that the public interest would be served by granting an injunction. Doc. 3 at ¶¶ 2-6.

On July 18, 2008, Defendant filed a response in opposition to Plaintiff's Motion. Therein, Defendant states that "ITS has no intention of using the [alleged violative advertisements] again" and argues, "[t]he preliminary injunction sought by JTH would, therefore, have no impact." Doc. 12 at 2. In addition, Defendant argues that Plaintiff will suffer no irreparable harm if no injunction is entered, that Defendant will suffer harm if the injunction is entered, that Plaintiff is unlikely to succeed on the merits, and that the public interest would be disserved by entry of a preliminary injunction. Id. at 9-15.

On July 28, 2008, Plaintiff filed its rebuttal to Defendant's response in opposition. Doc. 16.

On October 24, 2008, Plaintiff filed a "notice of request for oral arguments" on its motion for a preliminary injunction. Doc. 19. On November 1, 2008, Defendant filed a motion to strike Plaintiff's notice and included a memorandum in support thereof. Docs 20 (Motion) and 22 (Memorandum). Later that same day, Plaintiff filed a response in opposition to Defendant's

motion to strike. Defendant filed its rebuttal to Plaintiff's response in opposition on November 7, 2008. Doc. 24.

## II. Legal Standard

To obtain a preliminary injunction, the traditional standard requires the court to evaluate four factors: (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest. Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997) (quoting Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 812 (4th Cir. 1991)). The plaintiff bears the burden of establishing that the court should grant a preliminary injunction. Id. (quoting Hughes Network Systems, Inc. v. Interdigital Comm. Corp., 17 F.3d 691, 693 (4th Cir. 1994)). The party requesting the injunction must first make a "clear showing" that it will suffer irreparable harm if the Court denies its request. Direx Israel, Ltd., 119 F.3d at 812-13. Only after the party has made such a "clear showing" of irreparable harm, should the Court then endeavor to balance the likelihood of irreparable harm to the plaintiff from the failure to grant interim relief against the likelihood of harm to the defendant from the grant of such relief. Id. at 812.

The United States Court of Appeals for the Fourth Circuit follows the "balance of hardship" test. Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Manu. Co., Inc., 550 F.2d 189, 195 (4th Cir. 1977); see also Manning, 119 F.3d at 263. Under this analysis, the court must first "balance the 'likelihood' of irreparable harm to the plaintiff against the 'likelihood' of harm to the defendant." Id. "The harm demonstrated by the plaintiff must be 'neither remote nor speculative, but actual and imminent.'" Manning, 119 F.3d at 263 (internal quotations omitted). If the hardship balances in favor of the plaintiff, then the likelihood of success of the claim is displaced and the plaintiff must only show that questions raised concerning the merits are "so

serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." Blackwelder, 550 F.2d at 195. However, the importance of the merits of the case increase as the "probability of irreparable injury diminishes." Id. "Thus, the balancing of hardships must be made before reaching the question of likelihood of success on the merits, because until that balance of harm has been made, the district judge cannot know how strong and substantial must be the plaintiff's showing of likelihood of success." Manning, 119 F.3d at 263-64 (internal quotations and citation omitted). "Once this analysis is completed, the district court is [then] in the proper position to make a final determination of whether a preliminary injunction should be entered." Id. at 264.

### III. Analysis

The central issue with regard to the Court's analysis of Plaintiff's Motion is the fact that the advertisements that included the allegedly false and misleading claims have stopped airing. Defendant's response in opposition to Plaintiff's Motion states the following:

> The radio spot was intended to, and did, have only a limited run. For example it ran in Virginia only May 5-10. It was designed to generate leads for potential franchises after the conclusion of tax season to maximize the lead time before next year's season. ITS's plan always was to create a new campaign based on the updated data to begin running after June. At the time that JTH filed this action, 92% of the radio spots had ceased running. The radio spot ceased running everywhere, as had previously been planned, as of June 21. 2008.

Doc. 12 at 7. Further, Defendant contends it "does not intend to run any further ads that contain the formulation of average sales per location." Id. at 8. These statements are supported by the declaration of Gregory Woryk, ITS's Vice President of Marketing. See Doc. 13 (Declaration of Gregory Woryk) at ¶¶ 9-10.

In its rebuttal to Defendant's response in opposition, Plaintiff does not dispute that the advertisements including the allegedly false and misleading statements have ceased airing on the

radio. In fact, Plaintiff confirms that the advertisements have ceased, stating "[o]n June 21, 2008, three days after being served, [ITS] finally ceased their deceptive radio advertisements." Doc. 16 at 2.

While the voluntary cessation by a defendant of allegedly illegal activity does not necessarily render moot a suit regarding that activity, such cessation weighs heavily in determining whether Plaintiff has established that it will suffer irreparable harm if an injunction is not entered. See City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982). In order to establish that a preliminary injunction is necessary, a plaintiff must first establish the likelihood of irreparable harm of an injunction is not entered. Such harm "must be 'neither remote nor speculative, but actual and imminent.'" Manning, 119 F.3d at 263. Because Defendant has ceased the alleged violative conduct, and because Plaintiff does not dispute this fact, the Court cannot find that Plaintiff has established actual or imminent irreparable harm if an injunction is not ordered.

Plaintiff argues that precedent requires this Court to find that Plaintiff will suffer irreparable injury if an injunction is not entered. Plaintiff is incorrect. In the memorandum in support of its motion Plaintiff states "'when the failure to grant relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied.'" Doc. 4 at 9 (quoting Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Op. Co., 22 F.3d 546, 552 (4th Cir 1994)). While this is a correct statement of the law, it does not necessarily follow that Plaintiff has met the irreparable injury prong. Here, the "failure to grant" injunctive relief will not create "the possibility of permanent loss of customers" because the advertisements including the alleged violative language have already ceased. If Defendant's

advertisements did violate the Lanham Act and Plaintiff has suffered the permanent loss of customers or good will, those losses have already occurred; those losses would remain unaffected if the Court granted Plaintiff's request for a preliminary injunction. Accordingly, if Plaintiff is able to establish its false advertising claim by a preponderance of the evidence, the likely remedy for any harm will be damages, not the grant of a preliminary injunction.

### III. Conclusion

For these reasons, Plaintiff's Motion, doc. 3, is **DENIED**. The Court notes, however, that Defendant has only voluntarily ceased the alleged violative advertisements. Accordingly, Plaintiff is free to request appropriate relief from the Court if Defendant resumes the alleged violative conduct before the conclusion of this action.

Further, because Plaintiff's Motion is **DENIED**, Defendant's motion to strike, doc. 20, is **DISMISSED as MOOT**.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
DATE: 12/15/08